**UNITED STATES of América, Appellee,**

v.

**Angel VARGAS, Defendant–Appellant.**

**Docket No. 03–1519.**

United States Court of Appeals, Second Circuit.

Argued: April 5, 2004.

Decided: May 21, 2004.

Thomas V. Daily, Esq., Assistant U.S. Attorney, U.S. Attorney's Office, Hartford, CT, for Appellee.

Robert G. Golger, Esq., Quatrella & Rizio, One Post Road, Fairfield, CT, for Defendant–Appellant.

Before: WALKER, Chief Judge, VAN GRAAFEILAND and STRAUB, Circuit Judges.

VAN GRAAFEILAND, Senior Circuit Judge.

Angel Vargas appeals the District Court's (Hall, J.) order denying Vargas's Motion to Suppress Evidence based on the alleged illegal search and seizure of him by the Police Department of Hartford Connecticut. The District Court determined that the police had reasonable suspicion to stop and frisk him, and denied his motion.

During November and December of 2002, a confidential informant advised Detective Ramon Baez of the Hartford Police Department that an individual with the street name of "Ching" was robbing drug dealers with a firearm in the Putnam Heights area of Hartford (a high crime area). The confidential informant previously had provided the police with timely and accurate information relating to drug deals in this area.

On December 4, 2002, Detective Baez was contacted by the confidential informant, who told him that the Hispanic male he knew by the name of "Ching" (who would be identified later as the defendant Vargas) was in front of 13 Putnam Heights and was carrying a gun in his waistband. The informant described "Ching" as being of medium complexion, approximately five feet, seven inches in height, wearing a black shirt, black jeans, black knit cap, and black boots.

After receiving this information, Detectives Baez and Curtis Lollar, Jr., assisted by members of the Hartford and Connecticut State Police Departments, went to the area of Putnam Heights. Detectives Baez and Lollar walked through rear yards across the street from 13 Putnam Heights, and observed an individual matching the description given by the informant, standing on the front porch of 13 Putnam Heights with several other males. That individual was identified later as Vargas.

Detective Baez contacted other members of the Hartford Narcotics Unit by radio, informing them of Vargas's location. Detectives Baez and Lollar then saw Vargas and two other Hispanic males walk off the porch and proceed East on Putnam Heights. Detective Ezequiel Laureano was in an unmarked police car with Connecticut State Trooper David Diaz and observed Vargas walking down the street. Detective Laureano exited the unmarked police car and identified himself by saying, "Hartford Police. Can I talk to you?" Vargas did not respond, but immediately turned and fled.

Laureano and Diaz pursued him. Vargas ultimately ran up an alleyway directly into the path of Baez and Lollar, who attempted to detain Vargas. After a brief struggle, he was placed on the ground, handcuffed, and patted down. The officers found a loaded Smith & Wesson .22 caliber revolver on Vargas.

Vargas was indicted on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). On April 22, 2003, the District Court denied Vargas's Motion to Suppress Evi-

dence based on an alleged illegal search and seizure. On May 7, 2003, Vargas entered a conditional plea of guilty to the indictment. On July 29, 2003, the District Court sentenced Vargas to a term of 180 months of imprisonment. This appeal followed. For the reasons that follow, we affirm.

Vargas's appeal rests primarily on the argument that the encounter at issue was not an investigatory stop, but rather an arrest requiring probable cause. Vargas claims that he was under arrest "from the very moment the police approached him."

■ In *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court carved out an exception to the general rule requiring probable cause for a search, permitting an investigating officer to briefly detain an individual for questioning. An officer may, consistent with the Fourth Amendment, briefly detain an individual "if the officer has a reasonable suspicion that criminal activity may be afoot." *United States v. Colon*, 250 F.3d 130, 134 (2d Cir.2001)(internal quotation marks omitted). During an investigatory stop, "[t]he investigating officer may also frisk an individual for weapons if the officer reasonably believes that person to be armed and dangerous." *Id.*

■ In this case, the conclusion that the officers had reasonable suspicion is a straightforward one. In light of both (i) the specific, detailed and contemporaneous tip that the officers received from their reliable confidential informant regarding Vargas's armed presence at 13 Putnam Heights (and the past tips regarding Vargas's criminal conduct), and (ii) Vargas's evasive flight when Detective Laureano and Trooper Diaz approached him (in a "high crime area" known for having "a lot of drugs [and] a lot of guns"), the officers clearly had reasonable suspicion to detain Vargas. *See Adams v. Williams*, 407 U.S.

143, 146–47, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)(holding that tip from known, reliable informant that was "immediately verifiable at the scene" could form basis for reasonable suspicion and forcible *Terry* stop); *Illinois v. Wardlow*, 528 U.S. 119, 124–25, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)(holding that, in a high crime area, unprovoked, headlong flight from police can form the basis for reasonable suspicion under *Terry* ).

■ In determining whether an investigatory stop is sufficiently intrusive to ripen into a *de facto* arrest, the Second Circuit considers the "amount of force used by the police, the need for such force, and the extent to which an individual's freedom of movement was restrained, and in particular such factors as the number of agents involved, whether the target of the stop was suspected of being armed, the duration of the stop, and the physical treatment of the suspect, including whether or not handcuffs were used." *United States v. Perea*, 986 F.2d 633, 645 (2d Cir.1993)(internal quotation marks and citations omitted).

■■ Vargas's claim that he was arrested when he first came in contact with the police is based largely on the misplaced argument that the officers intended to arrest him at the outset. However, the officers' subjective intent does not calculate into the analysis of when Vargas was arrested. *See Arkansas v. Sullivan*, 532 U.S. 769, 771, 121 S.Ct. 1876, 149 L.Ed.2d 994 (2001); *see also United States v. Bayless*, 201 F.3d 116, 133 (2d Cir.2000)("[R]easonable suspicion is an objective standard; hence, the subjective intentions or motives of the officer making the stop are irrelevant."). Additionally, the remaining objective factors surrounding Vargas's arrest do not support his

contention that he was under arrest when police first approached him.

When the police first approached Vargas, instead of using force, they merely asked to talk to him. His freedom clearly was not restrained, considering the fact that he fled after the officers asked to speak to him. In addition, Vargas was suspected of being armed based on the information provided by the reliable confidential informant, and he had to be approached with caution. Vargas was not arrested when he was first approached by police.

■ Vargas argues in the alternative that if he was not arrested when the police first came in contact with him, he was arrested by the time the police caught up with him, and placed him in handcuffs. Vargas argues that at that point, the officers did not have probable cause to arrest him.

■ However, although "[u]nder ordinary circumstances, drawing weapons and using handcuffs are not part of a *Terry* stop[,] intrusive and aggressive police conduct" is not an arrest "when it is a reasonable response to legitimate safety concerns on the part of the investigating officers." *United States v. Miles*, 247 F.3d 1009, 1012 (9th Cir.2001) (citations omitted). In this case, the officers had reliable information that Vargas was carrying a weapon. Vargas had demonstrated his unwillingness to cooperate with the officers' investigation by fleeing from them when originally approached and continuing to struggle with Officer Lollar following the stop. Immediately upon intercepting Vargas, Detective Lollar placed him on the ground and handcuffed him. Detective Lollar then conducted a pat down search for weapons and discovered Vargas's firearm. The detention of Vargas, prior to the discovery of the firearm, was very brief. It was only upon discovering the firearm that Vargas was placed under arrest.

We agree with the District Court that the officers used a greater degree of force than is typical of a *Terry* stop. However, the force was reasonable under the circumstances and the stop did not become a full arrest until after the officers discovered Vargas was carrying a firearm. Indeed, it is possible that they could have arrested him based on the available information prior to finding the gun, but we need not decide that question because at the point of finding the gun, the police certainly had probable cause to arrest him. The order denying Vargas's Motion to Suppress is AFFIRMED.