12-1221-cr
*United States v. Clark*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of January, two thousand fourteen.

PRESENT:

> JON O. NEWMAN,
> RALPH K. WINTER,
> CHRISTOPHER F. DRONEY,
> > *Circuit Judges*,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

> *Appellee*,

> v. No. 12-1221-cr

JEREMIAH K. CLARK,

> *Defendant-Appellant*,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR APPELLANT: NICHOLAS J. PINTO, New York, New York.

FOR APPELLEE: STEPHAN J. BACZYNSKI, Assistant United States Attorney, *for* William J. Hochul, United States Attorney for the Western District of New York, Buffalo, New York.

Appeal from a judgment of the United States District Court for the Western District of New York (William M. Skretny, District Judge).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** in part and **REVERSED** in part.

Defendant-appellant Jeremiah K. Clark ("Clark") was convicted following a jury trial of being a felon in possession of ammunition and a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (Count I), and one count of possession of a controlled substance, in violation of 21 U.S.C. § 844(a) and 851 (Count II). On this appeal, Clark contends that the District Court erred in refusing to suppress evidence, and that the evidence adduced at trial was not sufficient to support his conviction on Count II. In this Order, we reject the first claim, and, in an opinion filed today, we uphold the second claim.

Following an evidentiary hearing, United States Magistrate Judge H. Kenneth Schroeder, Jr. issued a report and recommendation to deny Clark's motion to suppress evidence, and in an order dated August 6, 2004, the district court accepted the report and recommendation, and entered an order denying the motion. We have reviewed the district court's factual findings on the motion to suppress "for clear error, viewing the evidence in the light most favorable to the government," United States v. Lee, 723 F.3d 134, 139 (2d Cir. 2013), and found no clear error in the district court's findings. We summarize those findings as follows.

In the early morning of November 16, 2002, a 911 operator in the Niagara County Sheriff's Department informed police officers that she had received a call from a woman in a local bar named Gonzo's, and "That a, [the caller] said that Chris and Jason . . . Richardson . . .

2

Are out front in an older white Jeep Cherokee with guns. And they might not be there now but they have been circling the block because they are apparently going to attack somebody when they come out." The operator also explained that the caller had only given her first name and did not want any responding officers to interview her. Officer Scott Snaith of the City of Lockport Police Department took the call from the 911 operator, and recognized the Richardsons as having been involved in previous violent crimes. Officer Snaith relayed the information to fellow officers Steven Abbott and Todd Chenez, who then responded to the call.

After conferring briefly, the Officers Abbott and Chenez blocked in the Jeep Cherokee with their two patrol cars and exited their vehicles. With guns drawn but "at their sides," each officer walked along a side of the Jeep. Officer Abbott saw Raymond Flores and Jason Richardson in the back seat of the car, and Christopher Richardson in the front passenger seat. The defendant Clark was in the operator's seat. Officer Abbott knew Flores and the Richardsons from previous incidents; upon recognizing the Richardsons and Flores, and seeing some "nervous" movement from Clark, Abbott ordered the occupants of the car to "place their hands forward." Officer Abbott then began to question Clark. Officer Abbott told Clark that the officers were responding to a report of possible firearms, and asked whether there were any handguns in the car. Clark denied that there were weapons in the car. Officer Abbott then asked Clark to consent to a search, which Clark declined. Other officers began to arrive, and Officer Abbott asked Clark to step out of the car. Officer Abbott saw the butt of a handgun underneath the driver's seat as Clark was getting out of the car.

Deputy Sheriff Gary May of the Niagara County Sherriff's Department was one of the officers to arrive after Officers Abbott and Chenez made their initial approach. Upon his

3

arrival, he parked in front of the Jeep. He noted that an individual had been removed from the car and was being questioned by Officer Abbott. Deputy May then went to the driver's side of the vehicle and scanned its occupants. He then observed "what [he] thought was a butt of a gun underneath the driver's seat . . . on the floor," and "opened the door and retrieved" the weapon. Clark was then taken into custody.

Niagara County Deputy Sheriff Anthony Giamberdino placed Clark in the back compartment of his police cruiser. After arriving at the Lockport police headquarters, Deputy Giamberdino helped Clark out of the car. In the course of checking underneath the backseat, Deputy Giamberdino noticed a white powdery substance that proved to be cocaine. The facts concerning this discovery are detailed in the opinion filed today.

Clark was charged with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count I), and with possession of cocaine, in violation of 21 U.S.C. § 844(a) (Count II). Clark moved to suppress both the firearm and the cocaine, asserting that they were the fruit of an illegal search and arrest. As mentioned above, the District Court denied the motion. After a jury trial, Clark was convicted on both counts. Clark moved for a judgment of acquittal or a new trial pursuant to Federal Rules of Criminal Procedure 29 and 33; this motion was also denied.

The District Court concluded that the officers' actions prior to discovery of the firearm constituted a stop, and that the stop was supported by the required reasonable suspicion. We review the district court's legal conclusions de novo. Lee, 723 F.3d 139.

Under Terry v. Ohio, 392 U.S. 1 (1968), a police officer can effect a "stop" if she has a "reasonable suspicion" that criminal activity is taking place. Id. at 30. By contrast, an

4

arrest must be supported by "probable cause." See United States v. Vargas, 369 F.3d 98, 101 (2d Cir. 2004). Clark contends that the officers' actions prior to discovery of the firearm constituted an arrest, not a stop. Clark further contends that regardless of whether the officers' actions constituted a stop or an arrest, their actions were unjustified because they lacked even a reasonable suspicion that criminal activity was taking place.

We hold that under the specific circumstances of this case, the officers' actions constituted a stop, not an arrest. "A permissible investigative stop may become an unlawful arrest if the means of detention are 'more intrusive than necessary.'" United States v. Tehrani, 49 F.3d 54, 61 (2d Cir. 1995) (quoting United States v. Perea, 986 F.2d 633, 644 (2d Cir. 1993)). "In determining whether an investigatory stop is sufficiently intrusive to ripen into a de facto arrest, the Second Circuit considers the 'amount of force used by the police, the need for such force, and the extent to which an individual's freedom of movement was restrained, and in particular such factors as the number of agents involved, whether the target of the stop was suspected of being armed, the duration of the stop, and the physical treatment of the suspect, including whether or not handcuffs were used.'" Vargas, 369 F.3d at 101 (quoting Perea, 986 F.2d at 645).

As this Court's cases make clear, the central consideration is the officers' justification for their actions: acts that are typically inconsistent with a mere stop, such as drawing a firearm, will not convert a stop into a de facto arrest if they represent reasonable precautions in light of the circumstances. See, e.g. Perea, 986 F.2d at 644 (blocking in car and approaching with guns drawn was stop, not arrest, given officers' previous observations). Here, officers were responding to a report that the occupants of the Jeep were armed and intended to

5

commit a violent crime. Moreover, the officers recognized several occupants of the car as having been involved in previous crimes. Compare United States v. Ceballos, 654 F.2d 177, 184 (2d Cir. 1981) (blocking in car and approaching with guns drawn was arrest, not stop, where occupant "was completely unknown to the officers" and "was not known to be armed or reasonably suspected of being armed"). In light of the circumstances here, the officers' initial actions constituted a stop, not an arrest.

We also hold that the stop was justified by the requisite reasonable suspicion. Citing Florida v. J.L., 529 U.S. 266 (2000), Clark contends that even if the officers' actions constituted a stop instead of an arrest, the stop was not supported by the necessary reasonable suspicion. At least three factors distinguish J.L. from this case. First, the tip gave the names of some of the individuals described, and law enforcement officers recognized them as having been involved in past offenses.

Second, the tip here was not truly anonymous. Officer Snaith was given the first name and location of the caller.

Finally, the call here reported an ongoing emergency. As we have explained, a call "reporting an ongoing emergency is entitled to a higher degree of reliability and requires a lesser showing of corroboration than a tip that alleges general criminality." United States v. Simmons, 560 F.3d 98, 105 (2d Cir. 2009). As relayed to Officer Snaith, the information in this case indicated that the occupants of the Jeep were armed and planning an attack. It would be unreasonable to insist that the officers should have waited for further corroboration before intervening.

6

Since the stop was lawful, and the firearm was in plain view of Officer Abbott and Deputy May during the course of the stop, the district court did not err in refusing to exclude the gun or any evidence obtained as a result of Clark's subsequent arrest.

Apart from the claim that the evidence was insufficient to support the narcotics conviction, a claim that we have upheld in an opinion filed today, we have considered all of Clark's remaining arguments and found each of them to be without merit. Accordingly, the judgment of the district court is AFFIRMED in part as to Count I and REVERSED in part as to Count II.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court