13-2993-cr
United States v. Bennett

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of March, two thousand fifteen.

PRESENT:   REENA RAGGI,
              RICHARD C. WESLEY,
              GERARD E. LYNCH,
                    *Circuit Judges*.

------------------------------------------------------------------------

UNITED STATES OF AMERICA,
                    *Appellee*,

          v.                                    No. 13-2993-cr

CHARLES BENNETT, AKA Michael Shannon,
                    *Defendant-Appellant*.

------------------------------------------------------------------------

FOR APPELLANT:                Nicholas J. Pinto, Esq., New York, New York.[1]

FOR APPELLEE:                Emily Berger, Maria Cruz Melendez, Nadia I. Shihata, Assistant United States Attorneys, *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, New York.

---

[1] Appellant was previously represented by Edward D. Wilford, Esq., New York, New York.

Appeal from a judgment of the United States District Court for the Eastern District of New York (I. Leo Glasser, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on August 2, 2013, is AFFIRMED.

Defendant Charles Bennett stands convicted after trial of one count of being a felon in possession of a firearm. See 18 U.S.C. § 922(g)(1). Sentenced to a below-Guidelines, statutory minimum term of 15 years' imprisonment, Bennett argues on appeal that (1) a firearm seized at the scene of his arrest, as well as his post-arrest statements, should have been suppressed; and (2) the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), should not have dictated his sentence. We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.      Failure To Suppress Firearm and Statements

Bennett contends that both the firearm seized at the scene of his arrest and custodial statements he made thereafter should have been suppressed as the fruits of an arrest made without probable cause. He further urges suppression of his post-arrest statements on the ground that he was not competent to waive his Miranda rights. Insofar as the district court's denial of suppression is based on findings of fact, we review those findings only for clear error, viewing the evidentiary record as a whole in the light most favorable to the prosecution. See United States v. Lucky, 569 F.3d 101, 105–06

2

(2d Cir. 2009).   At the same time, we review questions of law and mixed questions of law and fact de novo.   See id.

At the outset, we uphold the district court's ruling that Bennett lacked standing to challenge the seizure of a firearm from outside the doorway of an apartment adjacent to one to which he had unsuccessfully sought access shortly before arrest.   Because Bennett professed no possessory interest in the firearm and no proprietary interest in the apartment, the seizure did not implicate his Fourth Amendment rights.   See United States v. Watson, 404 F.3d 163, 166 (2d Cir. 2005) (holding that defendant lacked reasonable expectation of privacy in searched residence because he neither "owned the premises [n]or . . . occupied them and had dominion and control over them by leave of the owner" (internal quotation marks omitted)); United States v. Osorio, 949 F.2d 38, 40 (2d Cir. 1991) (assessing reasonable expectation of privacy by asking whether "defendant had any property or possessory interest in the place searched or the items seized.").[2]

To the extent Bennett sought suppression of the firearm and his post-arrest statements as fruits of an unlawful arrest, the argument fails on the merits.   Bennett's

---

[2] The government contends that defense counsel's subsequent agreement with the district court's standing ruling constitutes true waiver precluding review.   The argument is unconvincing because the statement was made after the district court denied suppression of the firearm and could not, therefore, be construed to invite an earlier error.   See United States v. Hertular, 562 F.3d 433, 444 (2d Cir. 2009) (describing true waiver as occurring where party has "invited" challenged ruling).   Nor was Bennett required to protest further to preserve the error for review.   See Fed. R. Crim. P. 51(a); cf. Thornley v. Penton Publ'g, Inc., 104 F.3d 26, 30 (2d Cir. 1997) ("Because [plaintiff] argued its position to the district judge, who rejected it, a further exception after [the ruling] would have been a mere formality, with no reasonable likelihood of convincing the court to change its mind on the issue.").

arrest challenge is grounded on his claim that police handcuffed—and thereby arrested—him almost immediately after ordering him to stop, at which time they lacked probable cause of criminal activity. The district court, however, specifically credited the contrary testimony of officers at the scene, which established that Bennett was first lawfully stopped pursuant to Terry v. Ohio, 392 U.S. 1 (1968), so that the officers could inquire as to suspicious activity that they had just witnessed. He was not handcuffed at that time. Rather, handcuffing occurred only after the initial suspicion supporting the stop ripened into probable cause, i.e., when Bennett lied to the officers, the officers identified the item they saw Bennett place in the doorway as a firearm, and Bennett thereupon tried to flee the scene. It was at that point that the officers apprehended, handcuffed, and lawfully arrested Bennett. See United States v. Hensley, 469 U.S. 221, 235–36 (1985) (holding that discovery of firearm during lawful Terry stop can constitute probable cause to arrest for illegal possession of weapon); accord United States v. Vargas, 369 F.3d 98, 102 (2d Cir. 2004) (same); see also Jenkins v. City of New York, 478 F.3d 76, 90 (2d Cir. 2007) (identifying flight from police as factor contributing to probable cause). When we defer to the district court's credibility determinations, as we must, see United States v. Jiau, 734 F.3d 147, 151 (2d Cir. 2013), we necessarily reach the same legal conclusion, i.e., that Bennett was not arrested without probable cause and, therefore, that there was no reason to suppress either the seized firearm or his post-arrest statements as constitutionally tainted.

4

Bennett nevertheless argues that suppression of his post-arrest statements was required because a head injury sustained during arrest and attending pain medication rendered him incompetent to execute a knowing and voluntary waiver of his <u>Miranda</u> rights. <u>See United States v. Medunjanin</u>, 752 F.3d 576, 586 (2d Cir. 2014) (discussing standard governing waiver of <u>Miranda</u> rights). Here again, the district court specifically credited contrary testimony indicating that Bennett was carefully advised of each of his <u>Miranda</u> rights, and that he was alert, coherent, and fully responsive in waiving these rights, responding orally to questions, and electing not to execute a written statement. Moreover, trial testimony confirmed that he was neither seriously injured nor heavily medicated at the time of the challenged waiver. <u>See United States v. $557,933.89, More or Less, in U.S. Funds</u>, 287 F.3d 66, 83 (2d Cir. 2002) (stating that reviewing court may consider trial testimony that supports denial of pre-trial suppression motion). Thus, we defer to the district court's factual findings as to Bennett's condition and, having done so, concur in its determination that Bennett voluntarily waived his rights before making the challenged statements. The record in this case is not analogous to that in <u>United States v. Taylor</u>, 745 F.3d 15, 23–26 (2d Cir. 2014) (holding that due process precluded post-arrest questioning of defendant who, despite knowing waiver of <u>Miranda</u> warnings, could not stay awake during questioning). Indeed, the record indicates that Bennett's condition at the time of his post-arrest statements was far better than that of the hospitalized, medicated defendant in <u>Campaneria v. Reid</u>, 891 F.2d 1014, 1017, 1020 (2d Cir. 1989), a case in which we upheld a voluntariness determination.

Accordingly, we conclude that the district court correctly denied Bennett's motion to suppress in its entirety.[3]

2.      Sentencing Challenge

Bennett challenges his 15-year sentence, mandated by the ACCA in light of his record of prior felony convictions, on the grounds that (1) his 1978 state conviction for attempted burglary was constitutionally invalid; (2) Alleyne v. United States, 133 S. Ct. 2151 (2013), required the jury to determine the validity of his two other state convictions (in 1981 for attempted robbery and in 1989 for murder and manslaughter); and (3) the district court erred in looking only to New York Certificates of Disposition in determining that these convictions qualified as "violent felonies" under 18 U.S.C. § 924(e).   We review these questions of law de novo, see United States v. King, 325 F.3d 110, 113 (2d Cir. 2003), and conclude that Bennett's arguments are foreclosed by controlling case law.

Bennett's first argument is foreclosed by Custis v. United States, 511 U.S. 485 (1994), which holds that, with the sole exception of convictions obtained in violation of the right to counsel—which is not at issue here—a defendant may not collaterally attack

---

[3] Bennett also argues that the statements he made in a proffer session with the Government should have been suppressed.   But no such statements were introduced at trial.   The only reference to Bennett's proffer session in the Government's case-in-chief was a statement he made in a telephone call to his girlfriend.   Bennett did not object at trial to the admission of that phone call, nor does he raise any issue on appeal as to its admission.

6

the validity of prior state convictions used to enhance his sentence under the ACCA. See id. at 487; accord United States v. Buie, 547 F.3d 401, 405–06 (2d Cir. 2008).

Bennett's second argument is defeated by Almendarez-Torres v. United States, 523 U.S. 224 (1998). That case holds that the fact of a prior conviction is determined by the court, see id. at 226–27, even though other facts increasing a defendant's statutory sentencing range must now generally be proved to a jury beyond a reasonable doubt, see Apprendi v. New Jersey, 530 U.S. 466, 476 (2000). Alleyne v. United States, far from holding otherwise, expressly declined to revisit this exception. 133 S. Ct. at 2160 n.1. As a result, our own court has recognized the continuing binding effect of Almendarez-Torres after Alleyne. See United States v. Dantzler, 771 F.3d 137, 143–45 (2d Cir. 2014). Nor is a different conclusion warranted because Bennett's argument pertains to the validity, rather than the fact, of his prior convictions. The validity of a former conviction is a question of law, and Bennett cites no authority for submitting it to a jury.

As for Bennett's third argument, we note that he did not raise the point before the district court, and we therefore review only for plain error. See United States v. Groysman, 766 F.3d 147, 154–55 (2d Cir. 2014). We conclude that the district court did not err—much less plainly err—in relying on the certificates of disposition to find that Bennett had three prior convictions. New York law states that "[a] certificate issued by a criminal court, or the clerk thereof, certifying that a judgment of conviction against a designated defendant has been entered in such court, constitutes presumptive evidence of

7

the facts stated in such certificate." N.Y. Crim. Proc. Law § 60.60(1). Our own court has recognized such certificates of disposition as "a judicial record of the offense of which a defendant has been convicted." United States v. Green, 480 F.3d 627, 632 (2d Cir. 2007). We have further recognized that New York courts regularly rely on such certificates in deciding whether to enhance a sentence on the ground that a defendant "has previously been convicted of a certain type of crime or a certain number of crimes." Id. at 633.

Here, the certificates relied on by the district court were sufficient to allow it to make the necessary categorical identification of violent felonies required under the ACCA. See 18 U.S.C. § 924(e)(2)(B) (defining "violent felony"); Descamps v. United States, 133 S. Ct. 2276, 2281 (2013) (providing for categorical determination); accord United States v. Johnson, 616 F.3d 85, 88 (2d Cir. 2010) (same). The certificates reported Bennett's convictions for attempted robbery in the first degree, see N.Y. Penal Law § 160.15, and murder in the second degree, see id. § 125.25, crimes for which a requisite element was "the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i); see United States v. Brown, 52 F.3d 415, 425–26 (2d Cir. 1995) (identifying New York robbery offenses as categorical violent felonies under ACCA); accord United States v. Miles, 748 F.3d 485, 490 (2d Cir. 2014); see also N.Y. Penal Law § 125.25 (identifying multiple branches of murder in the second degree, each of which requires defendant to cause death of another). Neither of these crimes has a disjunctive branch supporting conviction without proof of such force.

8

Thus, there was no need for the district court to conduct a modified categorical inquiry that reached beyond the certificates of disposition to consider the indictment, jury instructions, or plea transcript to determine under which branch of the statute Bennett was convicted. See Descamps v. United States, 133 S. Ct. at 2281. The certificates in this case also reported Bennett's conviction for attempted burglary in the third degree, see N.Y. Penal Law § 140.20, which crime we have held categorically qualifies as a violent felony because it necessarily "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii); see United States v. Lynch, 518 F.3d 164, 170 (2d Cir. 2008).

Shepard v. United States, 544 U.S. 13 (2005), and United States v. Rosa, 507 F.3d 142 (2d Cir. 2007), relied on by Bennett, are not to the contrary. Shepard considered what documents a court can reference when deciding whether a conviction resulting from a guilty plea under a state burglary statute that reached beyond "generic burglary" nevertheless qualified as "burglary" under 18 U.S.C. § 924(e)(2)(B)(ii), see 544 U.S. at 26 (holding that such inquiry is limited to charging document, plea agreement, plea colloquy, and comparable judicial records of same information). Rosa addressed the factfinding necessary for a juvenile delinquency offense to qualify as an ACCA predicate. See 507 F.3d at 145. Neither case involved state statutes addressing exclusively violent felonies. Nor did these cases address the sufficiency of unchallenged certificates of disposition to establish violent felonies. Accordingly, we identify no error in the district court's reliance on certificates of disposition in finding

9

Bennett to qualify for an armed career criminal sentencing enhancement under 18 U.S.C. § 924(e).

We have considered Bennett's remaining arguments, and we conclude that they are without merit. Accordingly, the judgment of conviction is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court