14-2914-cr
*United States v. Stambler*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of October, two thousand fifteen.

PRESENT:  JON O. NEWMAN,
                  JOSÉ A. CABRANES,
                                      *Circuit Judges,*
                  STEFAN R. UNDERHILL,
                                      *District Judge.[*]*

---

UNITED STATES OF AMERICA,

               *Appellee,*                                    No. 14-2914-cr

          v.

LEONARD I. STAMBLER,

               *Defendant-Appellant.[†]*

---

**FOR LEONARD I. STAMBLER:**                    GARY SCHOER,
                                                                 Law Office of Gary Schoer, Syosset, NY.

---

[*] The Honorable Stefan R. Underhill, United States District Court for the District of Connecticut, sitting by designation.

[†] The Clerk of Court is directed to amend the caption of the order as set forth above.

**FOR UNITED STATES OF AMERICA:**     ALLEN L. BODE (Emily Berger, *of Counsel*), Assistant United States Attorneys, *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Joseph F. Bianco, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Following a jury trial, defendant-appellant Leonard I. Stambler, a physician, was convicted on October 17, 2013, of one count of conspiracy to distribute oxycodone, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C), and one count of distribution of oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Stambler was sentenced principally to concurrent terms of ten years' imprisonment for each count and three years of supervised release. This appeal followed.

On appeal, Stambler argues, *inter alia*, that the District Court erred (1) when it denied a motion to suppress statements he made and physical evidence seized from his car in connection with an investigative stop; (2) when it refused to depart from the Sentencing Guidelines oxycodone-to-marihuana drug-equivalency conversion scheme, and miscalculated the relevant quantity of oxycodone involved in the offenses; and (3) when it instructed the jury on the doctrine of willful blindness, and refused to give Stambler's requested instruction on a medical practitioner's liability under 18 U.S.C. § 841(a). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**A.**

Stambler contends that the District Court erred when, on January 24, 2013, it denied his pretrial motion to suppress statements he made and physical evidence seized from his car on November 21, 2011, in connection with an investigative stop following several months of police surveillance. He principally raises three arguments as to why the Court should have granted his motion to suppress, each of which we address below and find to be without merit.

In evaluating the denial of a motion to suppress evidence, we review a district court's factual findings for clear error and its conclusions of law *de novo*, considering the evidentiary record in a light most favorable to the government. *See, e.g.*, *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013).

First, Stambler argues that the investigative stop was invalid at its inception because officers lacked reasonable suspicion of criminal activity before they directed his car to stop. It is beyond dispute that, under the Fourth Amendment, "law enforcement agents may briefly stop a moving

2

automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity." *United States v. Hensley*, 469 U.S. 221, 226 (1985). Although "the likelihood of criminal activity need not rise to the level required for probable cause," *United States v. Arvizu*, 534 U.S. 266, 274 (2002), "[a] reasonable basis requires more than a hunch," and instead "demands specific and articulable facts which, taken together with rational inferences from those facts, provide detaining officers with a particularized and objective basis for suspecting wrongdoing," *United States v. Bailey*, 743 F.3d 322, 332 (2d Cir. 2014) (internal quotation marks omitted) (citing *Terry v. Ohio*, 392 U.S. 1, 21, 27 (1968) and *Arvizu*, 534 U.S. at 273); *see also Navarette v. California*, -- U.S. --, 134 S. Ct. 1683, 1687 (2014) ("[T]he level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." (internal quotation marks omitted)). Courts look at the totality of the circumstances to determine whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing. *Arvizu*, 534 U.S. at 273 (noting also that "[t]his process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them").

Applying these principles here, we agree with the District Court that the stop was valid at its inception. Based on testimony at the suppression hearing, the District Court found that on the date of the stop, officers had observed Stambler, a physician without an office or staff, drive co-defendant Chris Adams to a pharmacy where, according to a tip, Adams was due to pick up a prescription of oxycodone. Stambler dropped Adams off in a parking lot adjacent to the pharmacy, even though the pharmacy parking lot had available parking spaces, and then drove out of the lot as Adams entered the pharmacy. After Adams emerged from the pharmacy with a white paper bag and made a cell-phone call, Stambler retrieved Adams with his car in the adjacent lot, and the two drove to the vicinity of a residence. Stambler then waited for three to five minutes while Adams met with an individual in a black Cadillac, after which Adams returned to Stambler's car and the two departed. Under the totality of the circumstances—including the officers' past surveillance of Stambler's suspicious prescribing activities—we conclude that these facts, and the rational inferences that could be drawn therefrom, provided the officers with a particularized and objective basis for suspecting that Stambler and Adams had engaged in the illegal distribution of oxycodone to the occupant of the black Cadillac. This was sufficient to justify the stop.

Second, Stambler argues that even if the investigatory stop were valid at its inception, the stop ripened into a *de facto* arrest without probable cause, in part because officers took Stambler's keys and detained him for "an extraordinary length of time." Under *Terry v. Ohio*, an investigative stop must be "reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Sharpe*, 470 U.S. 675, 682 (1985) (quoting *Terry*, 392 U.S. at 20). In determining whether a stop has been transformed into a *de facto* arrest, courts consider the "amount of force used by the police, the need for such force, and the extent to which an individual's freedom of movement was restrained, and in particular such factors as the number of agents involved,

3

whether the target of the stop was suspected of being armed, the duration of the stop, and the physical treatment of the suspect, including whether or not handcuffs were used." *United States v. Vargas*, 369 F.3d 98, 101 (2d Cir. 2004) (quoting *United States v. Perea*, 986 F.2d 633, 645 (2d Cir. 1993)). Courts assess whether an investigative stop is too long in duration by considering "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Sharpe*, 470 U.S. at 686. The Supreme Court has cautioned, however, that courts "should not indulge in unrealistic second-guessing" where "the police are acting in a swiftly developing situation." *Id.*

In the case at bar, the investigative stop was reasonably related in scope to the circumstances justifying the stop, and the stop was not unreasonably long. The two investigating officers parked their unmarked cars behind Stambler's car, on a public road, and approached with little if any display of force, asking Stambler for his driver's license and, as a precautionary measure, his car keys. Without brandishing a gun or handcuffing Stambler, an officer questioned him for approximately thirty minutes and ultimately informed him that he was not under arrest. Critically, there is no evidence that the officers unnecessarily delayed their investigation into whether Stambler had engaged in the illegal distribution of oxycodone. Indeed, the two officers split up and simultaneously questioned Stambler and Adams about the suspected oxycodone transaction, compared the responses, seized oxycodone from the car, and then asked follow-up questions before making arrangements to arrest Adams and to transport Stambler, who had agreed to further assist in the investigation, to the police station. *See, e.g.*, *United States v. Glover*, 957 F.2d 1004, 1013 (2d Cir. 1992) (citing cases holding that 30-minute investigative detentions were reasonable under the circumstances).[1] Because the stop was reasonably related in scope to the circumstances justifying the stop, it was not a *de facto* arrest requiring probable cause. *See Vargas*, 369 F.3d at 101.

Third, Stambler argues that officers violated his Fifth Amendment rights by interrogating him while he was "in custody"—during and after the investigative stop—without first providing

---

[1] Stambler makes much of the fact that his car keys were not returned to him for more than three hours. But this does not render the investigative stop and detention—which lasted approximately 30 minutes—unreasonable. *See Bailey*, 743 F.3d at 336–37 (where officers took control of a defendant's car keys during an investigatory stop, explaining that the "argument depend[ed] on the reasonableness of [the defendant's] continued detention because as long as a person's detention remains lawful, he can hardly complain about police retaining control over his means of departing the scene"). And even if Stambler's keys were not returned to him for more than three hours, his investigative detention terminated hours earlier when he voluntarily agreed, without any coercion, to proceed to the police station to assist with the investigation, and agreed that officers could park his car nearby in the interim. *See, e.g.*, *United States v. Hooper*, 935 F.2d 484, 489–90 (2d Cir. 1991) (noting that a seizure has not occurred if a defendant has consented to the encounter). The District Court's factual findings in this regard, which were based on the officer's testimony at the suppression hearing that the Court found credible, were not clearly erroneous.

*Miranda* warnings. "A suspect is entitled to *Miranda* warnings only if he or she is interrogated while 'in custody.'" *Tankleff v. Senkowski*, 135 F.3d 235, 242 (2d Cir. 1998) (citing *Thompson v. Keohane*, 516 U.S. 99, 100–01 (1995)). In determining whether an individual is in custody, courts examine all of the circumstances surrounding the interrogation, but "the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994) (internal quotation marks and brackets omitted). We have held that "[a] person is in custody for purposes of *Miranda* if a reasonable person in the suspect's shoes would not have felt free to leave under the circumstances." *See United States v. Badmus*, 325 F.3d 133, 138 (2d Cir. 2003); *see also United States v. Newton*, 369 F.3d 659, 672 (2d Cir. 2004). Thus, the court considers "two discrete inquiries[:] first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Badmus*, 325 F.3d at 138 (internal citations, quotation marks, ellipses, and brackets omitted).

In the circumstances presented here, we conclude that Stambler was not in custody within the meaning of *Miranda* and its progeny. As an initial matter, the District Court misstated the correct legal standard by applying a four-factor test *rejected* by the Supreme Court in *Stansbury v. California*. *See Stansbury*, 511 U.S. at 321–26 (reasoning that the California Supreme Court's four-factor test improperly accounted for officers' subjective views concerning whether the person being interrogated is a suspect, which is irrelevant to the assessment of whether the person is in custody). But the District Court's ultimate conclusion, based on its factual findings which were not clearly erroneous—that Stambler was at no time in custody—was correct. Officers questioned Stambler while he was in his car and did not order him out of the car; the questioning focused largely on Stambler's co-defendant, Adams, who was formally arrested in Stambler's presence, whereas Stambler by contrast was not handcuffed and was informed he was not under arrest; and Stambler voluntarily agreed to accompany officers to the police station after approximately thirty minutes, where he sat at a desk in an office until he was driven back to his car by officers. Because there was no formal arrest or "restraint on freedom of movement of the degree associated with a formal arrest," *Stansbury*, 511 U.S. at 322, we conclude that a reasonable person in Stambler's shoes would not have felt that he or she was not at liberty to terminate the interrogation and leave, *Badmus*, 325 F.3d at 138. *See also Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (holding that a defendant was not in custody where he came voluntarily to the police station and was informed he was not under arrest, noting "[n]or is the requirement of warnings to be imposed simply because the questioning takes place in the station or house, or because the questioned person is one whom the police suspect"). Because Stambler was never in custody, *Miranda* warnings were not required. *See Tankleff*, 135 F.3d at 242.

In sum, we conclude that the District Court properly denied Stambler's motion to suppress statements he made and physical evidence seized from his car in connection with the November 21, 2011, investigative stop.

5

**B.**

Stambler also challenges the District Court's imposition of a sentence principally of 120 months' imprisonment. He contends that the Court erred by declining to abandon the Sentencing Guidelines oxycodone-marihuana drug-equivalency conversion ratio, which, according to Stambler, "appears to be completely arbitrary, irrational, and at odds with the scientific literature"; and by miscalculating the number of oxycodone pills for which Stambler was responsible by including within its calculation pills that were prescribed for legitimate medical treatment. These arguments are without merit.

This Court reviews sentences imposed by district courts under a "'deferential abuse-of-discretion standard.'" *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). We review the District Court's interpretation of the Sentencing Guidelines *de novo*, but review any factual findings for clear error. *United States v. Legros*, 529 F.3d 470, 473–74 (2d Cir. 2008). "A district court's findings as to the quantity of narcotics involved in an offense are findings of fact subject to the clearly erroneous standard of review." *United States v. Prince*, 110 F.3d 921, 924 (2d Cir. 1997); *see also United States v. McLean*, 287 F.3d 127, 133 (2d Cir. 2002) ("If, in the absence of a drug seizure, a district court must estimate the amount of drugs involved in a crime for sentencing purposes, that estimation need be established only by a preponderance of the evidence.").

First, the District Court was required to treat the Guidelines as the "starting point and the initial benchmark," *Kimbrough v. United States*, 552 U.S. 85, 108 (2007), and it did not abuse its discretion when it agreed with, and applied, the Sentencing Guidelines drug-equivalency conversion ratio.

Second, we find no basis to disturb the findings of the District Court with respect to the quantity of oxycodone involved in the offenses. The Court found, by a preponderance of the evidence, that Stambler increased prescriptions of oxycodone to Adams and Adams's common-law wife without a legitimate medical purpose after May 1, 2011, and then calculated from that date the sum of the increases for purposes of sentencing. Based on the record before us, we cannot say that the Court's finding was erroneous, much less clearly erroneous.

**C.**

Finally, Stambler argues that the District Court's jury instructions were improper. He contends that the Court erred by instructing the jury on the doctrine of willful blindness because the government did not adduce any evidence that he turned a blind eye to his patients' drug transactions. Further, he argues that the Court erred by refusing to give his requested instructions on, *inter alia*, a medical practitioner's liability under 18 U.S.C. § 841(a).

6

This Court reviews challenged jury instructions *de novo. See, e.g., United States v. Rutigliano*, 790 F.3d 389, 401 (2d Cir. 2015). We will find error only if the challenged jury instruction "misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Id.* at 401–02. Stambler bears the burden of showing that his requested instruction "accurately represented the law in every respect and that, viewing as a whole the charge actually given, he was prejudiced." *Id.* at 401.

First, the District Court determined that there was ample evidence in the record to allow a reasonable jury to conclude that Stambler consciously avoided learning about his patients' drug transactions. We see no reason to disturb the Court's determination and accordingly hold that it did not err in instructing the jury on the doctrine of willful blindness.

Second, the District Court refused a portion of Stambler's requested instructions on the grounds that they were either not helpful to the jury or inaccurate statements of law. We agree. When a medical practitioner is charged with using his professional license to violate section 841, the jury instruction must convey that "the Government [is] required to prove that [the defendant] caused the drugs to be dispensed other than for a legitimate medical purpose, other than in good faith, and not in the usual course of medical practice." *United States v. Wexler*, 522 F.3d 194, 206 (2d Cir. 2008); *see also United States v. Moore*, 423 U.S. 122 (1975). The Court gave an instruction nearly identical to the one we held proper in *Wexler. See Wexler*, 522 F.3d at 205. Accordingly, Stambler failed to show that the Court erred and that he was prejudiced by the Court's refusal to give his requested instruction.

## CONCLUSION

We have considered Stambler's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the July 22, 2014, judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7