*United States v. Jason Twiss*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 19th day of December, two thousand eighteen.

Present:     ROBERT A. KATZMANN,
                          *Chief Judge*,
                   GUIDO CALABRESI,
                   RAYMOND J. LOHIER, JR.
                          *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

                   *Appellee*,

                   v.                                                      No. 17-3433

JASON TWISS,

                   *Defendant-Appellant*,

_____

| | |
|---|---|
| For Appellee: | Paul D. Silver, Assistant United States Attorney, *for* Grant C. Jaquith, United States Attorney for the Northern District of New York, Albany, NY. |
| For Defendant-Appellant: | Lisa A. Peebles, Federal Public Defender, James P. Egan, Assistant Federal Public Defender, Federal Public Defender's Office, Syracuse, New York. |

Appeal from a judgment of conviction of the United States District Court for the Northern District of New York (McAvoy, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant Jason Twiss appeals from a judgment of conviction entered on October 20, 2017 by the United States District Court for the Northern District of New York (McAvoy, *J.*), sentencing him principally to 80 months' imprisonment to be followed by three years' supervised release. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Twiss was stopped and arrested after police officers, responding to an anonymous 911 call around two in the morning, discovered a loaded rifle in the truck Twiss was driving. Two callers informed the 911 operator that three individuals in a black pickup truck had just "confronted" them in the parking lot of a hospital and displayed a gun. One caller said he knew that one of the individuals was a felon based on his facial tattoo and wanted him to be "put away for an illegal pistol." App. 266. Fourteen to sixteen officers arrived at the scene and conducted a "felony hot stop." App. 154. With guns drawn, the officers directed Twiss to exit the car, confirmed he didn't have a weapon, handcuffed him, and placed him in the back seat of a patrol vehicle. The officers repeated this process with the two other passengers. Then, two officers approached the vehicle, opened the passenger's side door, and saw the rifle.

On May 27, 2015, a grand jury in the Southern District of New York indicted Twiss on one count of unlawful possession of a firearm, one count of attempted possession with intent to distribute heroin, and one count of using and carrying a firearm in furtherance of a drug trafficking crime. Twiss filed a motion to suppress the evidence underlying the indictment,

2

asserting that it was obtained in violation of the Fourth Amendment. The district court (Sharpe, *J.*) denied the motion, and Twiss pled guilty to all three counts of the indictment.

On appeal, Twiss challenges the denial of his motion to suppress, arguing that (1) the anonymous 911 call did not provide reasonable suspicion for an investigatory stop; (2) even if it did, the stop ripened into a de facto arrest that was not supported by probable cause; and (3) the illegally obtained evidence was not admissible under the inevitable discovery doctrine. "On appeal from a challenged suppression order, we review a district court's findings of fact for clear error, and its resolution of questions of law and mixed questions of law and fact *de novo*." *United States v. Bohannon*, 824 F.3d 242, 247-48 (2d Cir. 2016) (citing *United States v. Bershchansky*, 788 F.3d 102, 109 (2d Cir. 2015)).

The anonymous 911 call was sufficiently reliable to provide reasonable suspicion to make the investigatory stop. In *Navarette v. California*, the Supreme Court held that police are justified in relying on an anonymous 911 call where the call is (i) made by an eyewitness, (ii) nearly contemporaneous with the event, and (iii) recorded and traced by the 911 system. 572 U.S. 393, 398-401 (2014). The 911 call in this case had all these features. The particularities of the call that Twiss identifies are not suspicious enough to undermine the call's reliability. For example, although the tipsters requested that the call not be recorded, they continued their report after the 911 operator informed them that 911 calls are always recorded. Further, the tip gave rise to reasonable suspicion of ongoing criminal activity: menacing in the second degree. *See Navarette*, 572 U.S. at 401-02 (internal citations omitted); N.Y. Penal Law § 120.14(1). While one caller clarified that none of the individuals had directly threatened them, he also said that he and the other caller "took off" because the other caller was "afraid." App. 264–66. The police thus had reason to believe that the suspects had "intentionally place[d] or attempt[ed] to place"

3

the callers "in reasonable fear of physical injury . . . by displaying a deadly weapon." N.Y. Penal Law § 120.14(1).

Acts typically inconsistent with a mere stop, such as drawing weapons and using handcuffs, do not render a stop an arrest "when it is a reasonable response to legitimate safety concerns on the part of the investigating officers." *United States v. Vargas*, 369 F.3d 98, 102 (2d Cir. 2004). However, "to satisfy the reasonableness standard, officers conducting stops on less than probable cause must employ the least intrusive means reasonably available to effect their legitimate investigative purposes." *United States v. Newton*, 369 F.3d 659, 674 (2d Cir. 2004). The following factors weighing in favor of finding a de facto arrest here: there were between fourteen and sixteen police officers for just three suspects, officers' guns were drawn throughout the stop, and the police handcuffed all three individuals and put them in the back of police patrol cars. On the other hand, the police had reasonable suspicion to believe Twiss and his companions were armed and Twiss was restrained for a very short time before the loaded rifle was discovered. *See Vargas*, 369 F.3d at 101 ("In determining whether an investigatory stop is sufficiently intrusive to ripen into a de facto arrest," we consider, among other things, "the number of agents involved, whether the target of the stop was suspected of being armed, the duration of the stop, and the physical treatment of the suspect."). We do not reach this difficult question since, even assuming *arguendo* that the stop ripened into an arrest, the district court properly denied Twiss's motion to suppress because the discovery of the firearm was inevitable.

"Under the inevitable discovery doctrine, 'evidence that was illegally obtained will not be suppressed if the government can prove that the evidence would have been obtained inevitably even if there had been no statutory or constitutional violation.'" *United States v. Mendez*, 315 F.3d 132, 137 (2d Cir. 2002) (quoting *United States v. Roberts*, 852 F.2d 671, 675-76 (2d Cir.

4

1988)). Evidence is admissible under this exception to the exclusionary rule "only where a court can find, with a high level of confidence, that each of the contingencies necessary to the legal discovery of the contested evidence would be resolved in the government's favor." *United States v. Heath*, 455 F.3d 52, 60 (2d Cir. 2006). "The government bears the burden of proving inevitable discovery by a preponderance of the evidence." *United States v. Stokes*, 733 F.3d 438, 444 (2d Cir. 2013) (citing *Nix v. Williams*, 467 U.S. 431, 444 (1984)).

As the district court found, the officers would have approached the truck and seen the rifle even if they had not conducted the felony hot stop. Alert to a "potentially life-threatening situation," which put the public at risk, the officers would have approached the car. App. 148. Given how quickly more than a dozen officers arrived at the scene, the evidence supports a "high level of confidence" that Twiss would not have driven away or hidden the rifle in time. And we defer to the district court's crediting of testimony that the rifle was in "plain view," such that an officer would have seen it as he neared the vehicle even if the door had been closed with the window up. App. 192.

We have considered all of Twiss's remaining contentions and have found in them no basis for reversal. For the reasons stated herein, the judgment of the district court is
**AFFIRMED**.

FOR THE COURT:

CATHERINE O'HAGAN WOLFE, CLERK