11-1732-cv
Fortunati, et al. v. State of Vermont, et al.

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>AMENDED SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 3rd day of December, two thousand twelve.

PRESENT: DENNIS JACOBS,
                    <u>Chief Judge</u>,
            ROSEMARY S. POOLER,
            PETER W. HALL,
                    <u>Circuit Judges</u>.

- - - - - - - - - - - - - - - - - - - -X
ROBERT A. FORTUNATI, administrator of
the estate of JOSEPH FORTUNATI; SUSAN
FORTUNATI; and MARK FORTUNATI,

        <u>Plaintiffs-Appellants</u>,

        -v.-                                11-1732-cv

STATE OF VERMONT,

        <u>Defendant</u>,

ANDREW CAMPAGNE; MARC THOMAS; JEREMY
HILL; TODD PROTZMAN; ROB SNETSINGER;
KARL GARDNER; HUGH O'DONNELL; MIKE
DUDLEY; and WALTER GOODELL,

        <u>Defendants-Appellees</u>.
- - - - - - - - - - - - - - - - - - - -X

1

**FOR APPELLANTS:**          George Spaneas, Lebanon, New Hampshire.

**FOR APPELLEES:**          David R. Groff, (David Cassetty, *on the brief*), *for* William H. Sorrell, Attorney General of Vermont, Montpelier, Vermont.

Appeal from a judgment of the United States District Court for the District of Vermont (Murtha, <u>J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED**.

This is an appeal from the district court's grant of summary judgment and judgment as a matter of law in favor of defendants on qualified immunity grounds. Robert Fortunati brought suit against members of the Vermont State Police ("VSP") in his capacity as administrator of his son Joseph Fortunati's estate under 42 U.S.C. § 1983 alleging that defendants violated Joseph's Fourth Amendment right to be free from excessive force when they fatally shot Joseph while attempting to take him into custody. Further, Robert, his wife Susan, and their other son Mark brought a claim against members of the VSP under 42 U.S.C. § 1983 for false arrest arising out of an incident that occurred when they went to the scene of Joseph's death. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

The district court granted summary judgment in favor of Defendants with respect to all claims arising out of the fatal shooting death of Joseph on the ground of qualified immunity. The Court reviews de novo a decision on a motion for summary judgment. <u>Mario v. P & C Food Markets, Inc.</u>, 313 F.3d 758, 763 (2d Cir. 2002). "Qualified immunity protects officials from liability for civil damages as long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Gilles v. Repicky</u>, 511 F.3d 239, 243 (2d Cir. 2007) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). To determine whether a defendant is entitled to qualified immunity, courts ask: whether the

2

facts shown "make out a violation of a constitutional right," and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). Qualified immunity applies to shield official actions that were "'objectively legally reasonable in light of the legal rules that were clearly established at the time [they were] taken.'" X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 66 (2d Cir. 1999) (alterations omitted) (quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987)); see also Taravella v. Town of Wolcott, 599 F.3d 129, 134-35 (2d Cir. 2010).

1.   Plaintiffs contend that there was a genuine dispute as to whether Joseph pulled his gun on the members of the VSP's Tactical Services Unit ("TSU") immediately before they opened fire on him.  The use of deadly force can be reasonable under the Fourth Amendment "if the suspect threatens the officer with a weapon."  Tennessee v. Garner, 471 U.S. 1, 11 (1985).  None of the small differences in testimony Plaintiffs cite creates a genuine dispute as to whether Joseph aggressively drew or reached for his gun immediately prior to being fired upon by the TSU team members.  Some officers were able only to see Joseph reach for his waist, but small differences in testimony simply do not rise to the level at which a reasonable jury could find the officers' credibility damaged.  The district court was therefore correct to conclude that there was no genuine dispute of material fact as to the credibility of the officers.

2.   Before the fatal shooting, officers Hill and Snetsinger shot beanbag rounds at Joseph.  Assuming that a reasonable jury could find that Hill and Snetsinger violated Joseph's Fourth Amendment right to be free from an unlawful seizure, we conclude that the officers' actions were "objectively legally reasonable," X-Men Sec., 196 F.3d at 66 (alterations omitted) (quoting Anderson, 483 U.S. at 639), because "'officers of reasonable competence could disagree on the legality of the action at issue,'" Manganiello v. City of New York, 612 F.3d 149, 165 (2d Cir. 2010) (quoting Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007)). Plaintiffs argue that internal VSP policy and the International Association of Chiefs of Police Training Key

3

No. 274 (the "Training Key") precluded the use of force in this situation. The Training Key does not proscribe the use of force against people with mental illness. The VSP use-of-force policy authorizes the use of deadly force when the "subject possesses a weapon, or is attempting to gain access to a weapon under circumstances indicating an intention to use it against the member [who used force] or others." (Joint Appendix 699.) The Troopers understood Joseph to either be armed or in close proximity to the gun he had brandished hours earlier. The intervening nine hours did not diminish the danger Joseph posed to police and the surrounding community. Thus, the use of non-deadly force by the Troopers who deployed the bean bag ammunition against Joseph meets the objective reasonableness test.

3. Plaintiffs also challenged the grant of qualified immunity to Defendants Protzman and Goodell, who deployed the TSU team. We conclude that the district court was correct; there was no "clearly established" right in this Circuit to be free from the deployment of a police SWAT team. Appellees argue that the decision to deploy a police SWAT team can itself never amount to a Fourth Amendment violation. We need not decide that question, which this Circuit has not addressed. See Estate of Smith v. Marasco, 430 F.3d 140, 149-50 (3d Cir. 2005) ("[A] decision to employ a SWAT-type team can constitute excessive force if it is not objectively reasonable to do so in light of the totality of the circumstances." (internal quotation marks omitted)); Overdorff ex rel. Holland v Harrington, 268 F.3d 1179, 1190 (10th Cir. 2001) ("[T]he decision to deploy a SWAT team to execute a warrant must be 'reasonable.'"). But see Salim v. Proulx, 93 F.3d 86, 92 (2d Cir. 1996) ("Officer Proulx's actions leading up to the shooting are irrelevant to the objective reasonableness of his conduct at the moment he decided to employ deadly force."); Carter v. Buscher, 973 F.2d 1328, 1332 (7th Cir. 1992) ("[P]re-seizure conduct is not subject to Fourth Amendment scrutiny.").

4. Qualified immunity was also granted with respect to Mark and Susan's false arrest claim. We assume that Mark and Susan's detention, which lasted forty-five minutes and involved handcuffs, ripened into an arrest. However, it was "objectively reasonable" for Defendants to believe the detention was lawful. This Court has in the past held that

officers may use more force than is typically used in a Terry stop without an "arrest" taking place when the officers are confronted with a situation that they know to be dangerous. See United States v. Vargas, 369 F.3d 98, 102 (2d Cir. 2004); United States v. Alexander, 907 F.2d 269, 272-73 (2d Cir. 1990). The encounter was tense; it took place at a crime scene; and the officers had reason to believe that Robert might be armed. The officers were undoubtedly aware that the Fortunati family would be upset over Joseph's death, and they could also reasonably protect against disruption of the scene of the shooting and interference with their investigative duties. It was therefore objectively reasonable for Defendants to believe that Susan and Mark's detention did not rise to the level of an arrest, notwithstanding that they may have been detained for a period of up to forty-five minutes after Robert had been taken into custody.

5. Although Plaintiffs mention their state law claims in their brief, they have not adequately briefed any state law issue. Plaintiffs have therefore waived any arguments with respect to their state law claimes. See Zhang v. Gonzales, 426 F.3d 540, 545 n.7 (2d Cir. 2005).

While we are fully cognizant of the tragic circumstances giving rise to this case, we find no error in the district court's rulings on the issues before us. For the foregoing reasons, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

5