# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1656

_____

Mountain Pure, LLC; Angela Smith; Gerald Miller; Court Stacks; Kimberly Harbeson; Scott Morgan; Tracy Bush; Quinton Riley; Kadeena Depriest; William Morris

*Plaintiffs - Appellants*

v.

Cynthia M. Roberts; Bobbi Spradlin; John Doe, 1-20

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 14, 2016
Filed: February 25, 2016

_____

Before MURPHY, SMITH, and BENTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Mountain Pure, LLC (Mountain Pure) and several of its employees brought this action against federal agents Cynthia Roberts and Bobbi Spradlin under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971),

alleging violations of their Fourth Amendment rights. The district court[1] granted summary judgment for the agents after concluding that qualified immunity barred those claims, and Mountain Pure and its employees appeal. We affirm.

I.

Mountain Pure is a water bottling company in Arkansas which the Small Business Administration (SBA) and the Internal Revenue Service (IRS) investigated for suspicion that its owner John Stacks had submitted a fraudulent application for a SBA disaster relief loan after a tornado reportedly damaged the company's property. The government suspected that Stacks had sought reimbursement for equipment that was undamaged and had diverted loan proceeds to his other businesses. Case agent Cynthia Roberts for the SBA and agent Bobbi Spradlin for the IRS obtained a warrant to search Mountain Pure's bottling facility. The warrant authorized the seizure of "any and all business records," including billing invoices, ledgers, accounts receivable, accounts payable, shipping logs, and Quickbooks files; as well as "any and all purchasing records," including invoices, asset lists, purchase agreements, and lease agreements; "tax preparation records"; and electronically stored files relating to Stacks' suspected fraud.

Thirty five federal and state law enforcement agents began their search of the bottling facility on January 18, 2012 at 8:45 a.m. The facility consisted of a bottling plant and office space totaling approximately 100,000 square feet. The agents drove to the plant in a convoy with their sirens sounding and lights flashing. Each federal agent wore a ballistic vest and carried a handgun and secondary weapon as required by SBA and IRS policies. During a protective sweep of the building, agents pushed Mountain Pure employees Tracy Bush and Scott Morgan against the wall, and one agent drew his weapon on vice president Court Stacks while entering his office. Neither Roberts nor Spradlin drew her firearm or instructed any agents to draw their weapons, instead leaving

---

[1]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

that decision to agent discretion. After finishing the protective sweep, the agents detained the employees in the facility's break room. The agents either confiscated the employees' cell phones or directed them to leave their phones in their offices, and they did not allow the employees to make phone calls while they were detained. Employee Gerald Miller arrived shortly after the agents began the search and was detained for 10 to 25 minutes outside the bottling facility while agents reviewed his identification; he was then escorted to the break room.

The agents seized various documents, including drawings, schematics, and operating manuals for several Mountain Pure machines, as well as binders and a textbook for a college tax class belonging to employee Kadeena DePriest. The agents continued to detain many Mountain Pure employees in the break room during the search, although those who worked in the plant area were allowed to return to work. The agents interviewed several employees, some of whom later testified at depositions that they were told they could not leave until they were interrogated. The office employees were detained until mid to late afternoon, although the precise time at which each employee was allowed to leave apparently differed. Some employees chose to stay at the plant until the search concluded later that night.

Mountain Pure and nine of its employees filed this action under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), against Roberts, Spradlin, and twenty unknown agents who helped execute the search warrant, alleging violations of their Fourth Amendment rights. Specifically, Mountain Pure alleged that the agents had used excessive force in executing the warrant because the number of agents and their weapon displays were unreasonable under the circumstances. Mountain Pure also alleged that the agents had unlawfully seized property that was outside the warrant's scope. The employees alleged that they had been unlawfully seized, claiming that the length of their detentions, their inability to contact others by phone, and their coerced interrogations were unreasonable. The employees also alleged that the agents had unlawfully seized their personal property which was outside the scope of the warrant. In addition, Tracy Bush, Scott Morgan, and Court

Stacks alleged that the agents had used excessive force when they pushed Bush and Morgan against the walls and pointed their weapons at Stacks. Mountain Pure and its employees later agreed that their claims against the twenty unknown agents should be dismissed, but continued to litigate their claims against SBA agent Roberts and IRS agent Spradlin.

Roberts and Spradlin filed a motion for summary judgment which the district court granted, concluding that qualified immunity barred the claims against them. The court concluded that neither the number of agents nor their possession of standard law enforcement weapons made the search unreasonable and that there was no evidence showing that Roberts or Spradlin had authorized the alleged use of excessive force against Bush, Morgan, or Stacks. It also concluded that no reasonable jury could find that the employees were unlawfully seized because there was no evidence showing that the agents had detained them in order to coerce them to submit to questioning. The court finally concluded that the seizure of the employees' cell phones was reasonable and that the agents could have reasonably believed that the warrant authorized the seizure of the other items alleged to be outside its scope. Mountain Pure and the employees appeal.

II.

We review de novo a district court's grant of summary judgment based on qualified immunity.[2] See Davis v. Hall, 375 F.3d 703, 711 (8th Cir. 2004). "Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Coates v. Powell, 639 F.3d 471, 476 (8th Cir. 2011) (internal quotation marks and alterations omitted). We therefore examine

---

[2]Our analysis of qualified immunity with respect to Bivens claims is the same as it is with respect to § 1983 claims. See Beck v. Schwartz, 992 F.2d 870, 871 (8th Cir. 1993). Cases addressing qualified immunity in the context of § 1983 claims can also be instructive.

"whether the facts, viewed in the light most favorable to the plaintiff[s], demonstrate the deprivation of a constitutional or statutory right," and also "whether [that] right was clearly established at the time of the deprivation . . . [such] that a reasonable official would understand that what he is doing violates that right." Jones v. McNeese, 675 F.3d 1158, 1161 (8th Cir. 2012) (alterations omitted). To determine whether the right at issue was clearly established, we apply "a flexible standard, requiring some, but not precise factual correspondence with precedent, and demanding that officials apply general, well-developed legal principles." Coates, 639 F.3d at 476.

## A.

We first address Mountain Pure's arguments that the district court erred in granting summary judgment to Roberts and Spradlin on its claims alleging excessive force and unlawful seizure of its property. Finding no error, we affirm.

Mountain Pure argues that the number of participating officers and their possession of weapons was an excessive use of force in the execution of the search warrant, particularly given the nonviolent nature of Stacks' alleged crime. In assessing a claim for a Fourth Amendment violation, we must determine whether the government acted reasonably, considering "whether the circumstances, viewed objectively, justify the challenged action." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (internal quotation marks and alterations omitted).

Here, the number of agents was reasonable in light of the size of the Mountain Pure facility. Further, SBA and IRS policies require agents to carry handguns and secondary weapons during the execution of any search warrant, and "reliance on a[n] . . . official policy that explicitly sanctioned the conduct in question is a relevant factor in considering the objective legal reasonableness of a[n] [ ] official's action." Coates, 639 F.3d at 477 (quoting Roska ex rel. Roska v. Peterson, 328 F.3d 1230, 1251–52 (10th Cir. 2003)) (internal quotation marks and alterations omitted). Moreover, Mountain Pure

cites no authority showing that the agents violated its clearly established rights as it must to overcome a defense of qualified immunity. See id. at 476.

Mountain Pure asserts that "the manner in which a warrant is executed is subject to later judicial review as to its reasonableness," Dalia v. United States, 441 U.S. 238, 258 (1979), but it relies primarily on authority addressing unreasonable seizures rather than searches. See, e.g., Graham v. Connor, 490 U.S. 386, 394 (1989). Such cases do not apply to Mountain Pure's unlawful search claim, as the "Search Clause of the Fourth Amendment is wholly distinct from the Seizure Clause, such that courts applying these clauses must understand they provide different protections against government conduct." Burlison v. Springfield Pub. Sch., 708 F.3d 1034, 1041 (8th Cir. 2013) (alterations omitted). Further, Mountain Pure's cases are factually distinguishable, as none indicates that the presence of armed officers, without more, is objectively unreasonable during the execution of a search warrant. We therefore conclude that the district court did not err in granting Roberts and Spradlin summary judgment on Mountain Pure's excessive force claim.

Nor did the district court err in granting the agents summary judgment on Mountain Pure's claim alleging unlawful seizure of its property. Mountain Pure argues that the seizure of its drawings, schematics, and operating manuals was unreasonable because those items were neither "business records" nor "purchasing records" within the scope of the warrant. Those documents did reflect the equipment Mountain Pure owned, however, and a reasonable official could therefore have believed that they were purchasing records within the scope of the warrant. This is particularly so given that "officers executing a search warrant are not obliged to interpret it narrowly." McClendon v. Story Cty. Sheriff's Office, 403 F.3d 510, 517 (8th Cir. 2005) (internal quotation marks omitted). The seizure of those documents was reasonable under the circumstances, and the Fourth Amendment was not violated. See, e.g., Johnson v. Outboard Marine Corp., 172 F.3d 531, 536–37 (8th Cir. 1999). We thus conclude that the district court did not err in granting summary judgment for Roberts and Spradlin on Mountain Pure's unlawful seizure claim.

B.

We next address the individual employees' arguments that the district court erred in granting summary judgment against them on their claims alleging unlawful detention, unlawful seizure of their property, and excessive force.

The employees contend that they were unlawfully seized when they were detained in the break room during the search. To determine whether a seizure is reasonable, we "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703 (1983). The Supreme Court has ruled that police officers may detain occupants of a premises while executing a search warrant, identifying three governmental interests that justify such seizures: "preventing flight in the event that incriminating evidence is found; minimizing the risk of harm to the officers; and facilitating the orderly completion of the search." Muehler v. Mena, 544 U.S. 93, 98 (2005) (internal quotation marks omitted). Here, detaining the employees prevented them from fleeing in the event that incriminating evidence was found and ensured that they would be present to assist with the completion of the search such as by opening locked file cabinets to avoid the use of force. See id. Moreover, the detention of the employees in the break room was not particularly intrusive, and we conclude that their detention during the execution of the search warrant was reasonable.

The employees argue that even if their initial detentions were reasonable, they were detained for an unreasonably long period of time. While a valid seizure may become unlawful if unreasonably prolonged, see, e.g., United States v. Peralez, 526 F.3d 1115, 1119 (8th Cir. 2008), the length of the detentions here was reasonable given that the search took nearly twelve hours and the government had a legitimate interest in detaining the employees during the search. Appellants have shown no precedent demonstrating that these detentions violated these employees' clearly established rights. See Coates, 639 F.3d at 476–77. Our court has recognized that "[t]he initial rounding up and temporary detention of employees are justified under the Fourth Amendment

-7-

when executing a search warrant founded on probable cause," and the temporal limits of that authority have not been clearly defined. United States v. Wallace, 323 F.3d 1109, 1111 (8th Cir. 2003). We therefore reject the employees' argument that qualified immunity should not apply due to the length of the detention.

The employees also contend that Roberts and Spradlin acted unreasonably in coercing them to submit to interrogations. They rely on Ganwich v. Knapp, 319 F.3d 1115, 1124 (9th Cir. 2003), in which the Ninth Circuit concluded that qualified immunity did not apply where police officers had "us[ed] the threat of continued detention to coerce [employees] to submit to interrogation" during a search of the employees' offices. The Ganwich court reasoned that the police conduct at issue violated the employees' clearly established rights because "the officers exploited the detention, prolonging it to gain information from the detainees, rather than from the search." Id. Ganwich is of course not binding on this court, and it is also distinguishable. The Supreme Court has explained that police questioning incident to a valid detention is not an "additional seizure within the meaning of the Fourth Amendment" if it does not prolong that detention; in such circumstances the government does not need an "additional Fourth Amendment justification" to question detainees. Muehler, 544 U.S. at 100–01. Unlike in Ganwich, there is here no evidence showing that the interrogations at issue prolonged the employees' detentions beyond a reasonable time. We thus reject the employees' argument that qualified immunity should not apply based on the nature of these interrogations.

The employees finally assert that Roberts and Spradlin acted unreasonably in detaining them incommunicado by denying them access to telephones. Again they rely on Ganwich, in which the Ninth Circuit also concluded that qualified immunity did not apply because the officers there had denied employees telephone access during their detentions. See Ganwich, 319 F.3d at 1123. The Ganwich court reasoned that based on the Supreme Court's decisions in Florida v. Royer, 460 U.S. 491 (1983) and Terry v. Ohio, 392 U.S. 1 (1968), a reasonable official would have known that incommunicado detention "was significantly more intrusive than was necessary for them to complete the

search" of the employees' offices. Ganwich, 319 F.3d at 1125. We disagree. To conclude that official conduct violates clearly established rights, we must find some "factual correspondence with precedent," which requires a "fact-intensive inquiry [that] must be undertaken in light of the specific context of the case, not as a broad general proposition." Coates, 639 F.3d at 476. Neither Royer nor Terry involved factually similar circumstances to those in question here, and those cases do not support the conclusion that the agents violated the employees' clearly established rights. See Royer, 460 U.S. at 493–495; Terry, 392 U.S. at 5–7. We thus conclude that the district court did not err in concluding that qualified immunity barred their unlawful detention claims.[3]

The district court also did not err in concluding that qualified immunity barred the employees' claims alleging an unlawful seizure of their property. The seizure of the employees' cell phones was reasonable given the government's interest in preserving evidence, as many employees used smartphones that could be used to access and erase electronic files remotely before those files could be seized. See, e.g., United States v. Photogrammetric Data Servs., Inc., 259 F.3d 229, 239 (4th Cir. 2001), abrogated on other grounds by Crawford v. Washington, 541 U.S. 36, 63–64 (2004). Further, those seizures did not violate the employees' clearly established rights—we are aware of no cases invalidating a seizure of detainees' cell phones during the execution of a search warrant. Coates, 639 F.3d at 476. The district court therefore did not err in concluding that qualified immunity barred the employees' claims regarding those seizures. Nor did it err in concluding that qualified immunity barred Kadeena DePriest's claims relating to the seizure of her tax binders and textbook, as a reasonable agent could have believed those items were within the scope of the warrant, which authorized the seizure of "tax

---

[3]Gerald Miller further asserts that the agents unlawfully seized him outside of the bottling facility. He relies on Bailey v. United States, 133 S.Ct. 1031, 1041–42 (2013), in which the Supreme Court limited the government's ability to detain occupants during a search to persons in the immediate vicinity of the place searched. Bailey was decided after the seizure at issue here, however, so even if the agents violated Miller's rights, those rights were not clearly established at the time he was seized. See Coates, 639 F.3d at 476.

preparation records." See McClendon, 403 F.3d at 517.  The district court thus did not err in granting summary judgment for Roberts and Spradlin on these claims.

We finally conclude that the district court did not err in granting summary judgment for Roberts and Spradlin on Bush, Morgan, and Stacks' excessive force claims. Our court has recognized that Bivens applies only to federal officials who "were actively involved in the alleged constitutional violation," and that those asserting Bivens claims must "ferret out the officials directly responsible" for such violations.  Laswell v. Brown, 683 F.2d 261, 268 (8th Cir. 1982).  While there is evidence showing that unidentified agents pushed Bush and Morgan against walls and pointed weapons at Stacks, the employees dismissed their claims against the unknown agents and there is no evidence showing that Roberts or Spradlin "participated in, ordered, or condoned" the alleged use of excessive force.  Hummel-Jones v. Strope, 25 F.3d 647, 653 n.10 (8th Cir. 1994).  The district court therefore did not err in granting summary judgment for Roberts and Spradlin on those claims.

## III.

For these reasons we affirm the order of the district court granting summary judgment for Roberts and Spradlin.

_____