# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-3581
_____

Allan Hinshaw

*Plaintiff - Appellant*

v.

Sheriff Keith Moore; Deputy Michael Borders

*Defendants - Appellees*

Jailer Doe

*Defendant*

Gerald Douglas

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: September 21, 2016
Filed: November 14, 2016
[Unpublished]

_____

Before RILEY, Chief Judge, MURPHY and SMITH, Circuit Judges.

_____

PER CURIAM.

Allan Hinshaw brought this action against three law enforcement officers alleging violations of his constitutional rights and Missouri state law. The district court[1] granted summary judgment to the law enforcement officers on the basis of qualified immunity, and Hinshaw appeals. We affirm.

I.

Allen Hinshaw owns approximately fifty acres of real estate in Mississippi County, Missouri. Hinshaw's property is bounded on the north by a levee and on much of the western, southern, and eastern sides by property commonly known as the Riley Estate. West of the Riley Estate is the Tomera property and the Dorena Hunt Club. County Road 509 is northeast of Hinshaw's property. A pathway connects County Road 509 to the Riley Estate and runs through Hinshaw's property. The pathway dates back to 1965. For at least the past twenty years the pathway has been used by various third parties to travel to either the Riley Estate or the Dorena Hunt Club. There are no written agreements concerning the use of this pathway, however.

On the morning of October 20, 2012 Roy Russell, Keith Arnold, and Dakota Arnold (the hunters) used the pathway to go bow hunting on the Tomera property. Roy Russell had been using the pathway since 1965. Keith Arnold, Russell's son in law, had used the pathway to hunt on the Tomera property for sixteen years. Dakota Arnold is Keith's daughter and was fifteen years old at the time. There was nothing blocking the pathway when the hunters used it to access the Tomera property that morning.

---

[1]The Honorable Abbie Crites-Leoni, United States Magistrate Judge for the Eastern District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

After Hinshaw noticed tire tracks on the pathway that morning, he put up barbed wire across a western portion of the pathway and parked his tractor in the middle of it. Later that morning the hunters attempted to return using the pathway, but found that it had been blocked. Russell asked Hinshaw if he was going to let the hunters pass. Hinshaw told them that they should go around a tree to their right, but Russell declined because he did not want to trespass on Hinshaw's property. Keith then asked Hinshaw to move his tractor. Hinshaw refused, claiming that the hunters' use of the pathway constituted trespassing.

Russell then called Sheriff Keith Moore. Moore was familiar with the pathway because he had been using it to access the Dorena Hunting Club since the early 1990s. Moore told Russell to tell Hinshaw that he would be arrested if he did not move the tractor. Hinshaw responded by shrugging his shoulders and saying "so." After overhearing Hinshaw's response, Moore contacted deputy sheriff Michael Borders. Borders testified at his deposition that Moore told him that Hinshaw was blocking the hunters from passing "through the road that they'd been using for several years." Moore then directed Borders to travel to the scene of the confrontation and attempt to get Hinshaw to move the tractor.

Before traveling to Hinshaw's property Borders contacted Darren Cann, the prosecuting attorney for Mississippi County. Cann advised Borders that he could charge Hinshaw with false imprisonment and peace disturbance if Hinshaw refused to move the tractor. Borders then traveled to Hinshaw's property and asked him to move the tractor. Hinshaw refused, and Borders arrested him. Borders then removed the barbed wire fencing and allowed the hunters to pass.

Borders transported Hinshaw to the Mississippi County Sheriff's Department. Gerald Douglas, a corrections officer, booked Hinshaw into the jail. After Hinshaw was booked, Douglas conducted a strip search. Borders later prepared a probable

cause affidavit that requested charges for false imprisonment and peace disturbance. The charges were ultimately dismissed.

Hinshaw filed this action against Moore, Borders, and Douglas. Hinshaw alleged under 42 U.S.C. § 1983 that the officers had entered into a conspiracy to arrest him in violation of his Fourth and Fifth Amendment rights. Hinshaw also alleged under § 1983 that Borders violated his Fourth and Fourteenth Amendment rights. Finally, Hinshaw alleged that Douglas violated Missouri law by conducting a strip search after booking him into jail.

Moore, Borders, and Douglas filed a motion for summary judgment, which the district court granted. The court concluded that qualified immunity barred the § 1983 claims against them and declined to exercise supplemental jurisdiction over the state law claim. Hinshaw appeals.

II.

We first address Hinshaw's argument that the district court erred in granting summary judgment to Borders on his § 1983 claim that Borders' arrest of Hinshaw violated his constitutional rights. We review a district court's grant of summary judgment based on qualified immunity de novo. Mountain Pure, LLC v. Roberts, 814 F.3d 928, 932 (8th Cir. 2016). Section 1983 provides a cause of action to any person injured as a result of being deprived of "any rights, privileges, or immunities secured by the Constitution" by a person acting under "color of state law." 42 U.S.C. § 1983.

If a government official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," then such conduct is protected by qualified immunity. Mountain Pure, 814 F.3d at 932 (quoting Coates v. Powell, 639 F.3d 471, 476 (8th Cir. 2011)). Although we view the facts "in the light most favorable to" the plaintiff, "qualified immunity is an affirmative

-4-

defense" and "the burden is on the plaintiff to . . . present evidence from which a reasonable jury could find that the defendant officer has violated the plaintiff's constitutional rights." Moore v. Indehar, 514 F.3d 756, 764 (8th Cir. 2008).

A police officer is entitled to qualified immunity for a warrantless arrest "if there is at least arguable probable cause." Borgman v. Kedley, 646 F.3d 518, 522–23 (8th Cir. 2011) (internal quotation marks omitted). There is probable cause to arrest "when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." Id. at 523 (internal quotation marks omitted).

Borders arrested Hinshaw for false imprisonment and peace disturbance. In Missouri a person commits the crime of false imprisonment if he "knowingly restrains another unlawfully and without consent so as to interfere substantially with his liberty." Mo. Rev. Stat. § 565.130. Hinshaw argues that he did not unlawfully restrain the hunters' liberty because he has a right to exclude others from his land. Moore told Borders, however, that Hinshaw was blocking the hunters from passing "through the road that they'd been using for several years." Moreover, Borders' probable cause statement labeled the pathway "an access road." It is at least arguable that a reasonable person could have concluded based on this evidence that Hinshaw did not have a right to block the pathway.

Hinshaw also argues Borders did not have probable cause to arrest him for false imprisonment because he did not threaten force against the hunters. Hinshaw's argument relies on the Missouri Approved Instructions for Criminal Trials (MAI-CR) which require the state to prove that the "restraint was by means of forcible compulsion." MAI-CR 3d § 319.28. The instruction then defines "forcible compulsion" to mean either: "(a) [p]hysical force that overcomes reasonable resistance; or (b) [a] threat, express or implied, that places a person in reasonable fear

of death, serious physical injury or kidnapping of such person or another person." See id.; Mo. Rev. Stat. § 556.061(12).

Even if we assume that Borders was required to have knowledge of the MAI-CR, we conclude that the district court did not err when it determined that a reasonable person could have construed Hinshaw's conduct as an implied threat. When the hunters attempted to return they found Hinshaw blocking their path with barbed wire and his tractor. Hinshaw refused to allow them to exit the property through the pathway. Borders thus had at least arguable probable cause to arrest Hinshaw for false imprisonment.

Hinshaw also argues that Borders did not have probable cause to arrest him for disturbing the peace. A person commits the crime of peace disturbance if he "is in a public place or on private property of another without consent and purposely causes inconvenience to another person or persons by unreasonably and physically obstructing . . . [t]he free ingress or egress to or from a public or private place." Mo. Rev. Stat. § 574.010(2)(b). Hinshaw argues that Borders could not have reasonably concluded that he was in a public place or private property of another when he was blocking the pathway. Borders arguably had probable cause, however, because the pathway had been used to access the Tomera property for at least the past twenty years. Moreover, Borders characterized the pathway as "an access road" in his probable cause statement.

The conclusion that qualified immunity protects Borders' conduct is supported by the fact that he consulted the county prosecutor prior to arresting Hinshaw. "Although following an attorney's advice does not automatically cloak [officers] with qualified immunity, it can show the reasonableness of the action taken." Frye v. Kansas City Mo. Police Dep't, 375 F.3d 785, 792 (8th Cir. 2004) (internal quotation marks omitted) (alteration in Frye). Here, Borders followed the county prosecutor's advice that he could charge Hinshaw with false imprisonment and peace disturbance

-6-

if Hinshaw refused to move the tractor. We thus conclude that Borders arguably had probable cause to arrest Hinshaw for false imprisonment and peace disturbance.

III.

Hinshaw also argues that the district court erred in granting the officers summary judgment on his § 1983 conspiracy claim. To prove such a claim "a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008). A plaintiff must also "prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." Id. Since Borders had probable cause to arrest Hinshaw, he cannot prove a deprivation of a constitutional right. The district court thus properly granted the officers summary judgment on Hinshaw's conspiracy claim.

IV.

Hinshaw finally argues that we should vacate and remand the district court's decision to decline to exercise supplemental jurisdiction over Hinshaw's remaining state law claim. A district court "may decline to exercise supplemental jurisdiction over a claim" if the "court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Normally we review such a decision for abuse of discretion, Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 640 (2009), but where "resolution of the remaining claims depends solely on a determination of state law, the [district court] should decline to exercise jurisdiction," Glorvigen v. Cirrus Design Corp., 581 F.3d 737, 749 (8th Cir. 2009) (quoting Farris v. Exotic Rubber & Plastics of Minn., Inc., 165 F. Supp. 2d 916, 919 (D. Minn. 2001)). Since Hinshaw's

only remaining claim depends solely on state law, the district court did not abuse its discretion by refusing to extend supplemental jurisdiction over that claim.

V.

For these reasons, we affirm the judgment of the district court.

_____