GRUENDER, Circuit Judge, concurring in part and dissenting in part.
While I agree with much of the court's analysis, I take issue with two points-that the use of the flash-bang grenade violated clearly established law and that the decision to authorize a SWAT team to execute a search warrant can constitute excessive force.
First, I disagree that the use of the flash-bang grenade violated clearly established law. Evaluating a claim of qualified immunity requires us to consider whether the violated constitutional right "was clearly established at the time of the defendant's alleged misconduct." Winslow v. Smith , 696 F.3d 716, 731 (8th Cir. 2012). Thus, we consider the law as it existed in November 2010, at the time of the search at issue here.
*690 To avoid qualified immunity, Z.J. may present "a robust consensus of cases of persuasive authority." De La Rosa v. White , 852 F.3d 740, 745 (8th Cir. 2017). The court claims that "many other courts" have addressed the reasonableness of the use of flash-bang grenades, ante , at 684, but it cites opinions from only the Ninth and Seventh Circuits. Agreement between two other circuits does not constitute a robust consensus of cases of persuasive authority. While some additional circuits have found Fourth Amendment violations involving flash-bang grenades, their decisions came after November 2010. See Dukes v. Deaton , 852 F.3d 1035 (11th Cir. 2017) ; Terebesi v. Torreso , 764 F.3d 217 (2d Cir. 2014).
Additionally, the Eleventh Circuit held in 2017 that a July 2010 search involving a flash-bang grenade did not violate clearly established law. Dukes , 852 F.3d at 1044. In Dukes , after a SWAT team deployed two flash-bang grenades, an officer threw another flash-bang grenade "into a dark room in which the occupants were asleep." Id . at 1040, 1042. There was "minimal need" for the officer to throw the third flash-bang grenade, and he did not inspect the room for bystanders. Id . at 1042. Though, as the court notes, the SWAT team was searching a house at which a drug dealer who carried a handgun resided, the Eleventh Circuit explained that deploying a third flash-bang grenade was "gratuitous" despite the fact that "drug dealers are known to be violent." Id . at 1042-43. Citing Sixth, Seventh, and Ninth Circuit cases, the Eleventh Circuit determined that the officer violated the Fourth Amendment. Id .
But the Eleventh Circuit also concluded that the officer did not violate clearly established law as it existed in 2010. It pointed to Boyd v. Benton Cty. , 374 F.3d 773 (9th Cir. 2004), a decision upon which the court in this case relies. Ante , at 684. Though the Ninth Circuit found in Boyd that throwing a flash-bang grenade into a room with up to eight people without first inspecting the room violated the Fourth amendment, it concluded that the right was not clearly established. Boyd , 374 F.3d at 779, 784. The Eleventh Circuit also considered Bing ex rel. Bing v. City of Whitehall, Ohio , 456 F.3d 555 (6th Cir. 2006). In Bing , the Sixth Circuit similarly found that the 2002 use of a second flash-bang grenade violated the Fourth Amendment but that the right was not clearly established by the Supreme Court, the Sixth Circuit, or any other circuit. 456 F.3d at 570. As evidenced by its citations to the Sixth, Seventh, and Ninth Circuits, the Eleventh Circuit in Dukes understood the law as it existed in 2010 but nevertheless concluded that it was not clearly established. Dukes , 852 F.3d at 1044.
Though the court correctly notes that the Seventh Circuit held that the July 2005 use of a flash-bang grenade violated clearly established law, Estate of Escobedo v. Bender , 600 F.3d 770, 786 (7th Cir. 2010), the reasoning of the Sixth, Ninth, and Tenth circuits demonstrates that the law was not clearly established. And Bender considered the use of flash-bang grenades in the context of a seizure rather than a search, as here. Id . at 780. Determining the reasonableness of a search or seizure requires "weighing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion," Cty. of Los Angeles v. Mendez , --- U.S. ----, 137 S. Ct. 1539, 1546, 198 L.Ed.2d 52 (2017) (internal quotation marks omitted), and searches and seizures implicate different Fourth Amendment interests, Segura v. United States , 468 U.S. 796, 806, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). See also *691 Mountain Pure, LLC v. Roberts , 814 F.3d 928, 933 (8th Cir. 2016) (explaining that unreasonable seizure cases do not apply to unreasonable search cases because the "Search Clause of the Fourth Amendment is wholly distinct from the Seizure Clause, such that courts applying these clauses must understand they provide different protections against government conduct").
In sum, Z.J. has not shown a "robust consensus of cases" that resolve "a fact-intensive Fourth Amendment issue under a governing standard that requires judges to 'allow[ ] officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.' " De La Rosa 852 F.3d at 747 (alteration in original). Further, Dukes , though different in some respects, illustrates that the law was not clearly established in November 2010.
I similarly disagree that the use of the flash-bang grenade violated law clearly established by a "general constitutional rule" that applied "with obvious clarity." See United States v. Lanier , 520 U.S. 259, 271, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." Pearson v. Callahan , 555 U.S. 223, 244, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). We must ask whether the constitutional question was "beyond debate." City & Cty. of S.F., Cal. v. Sheehan , --- U.S. ----, 135 S. Ct. 1765, 1774, 191 L.Ed.2d 856 (2015). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.' " Id . (alterations in original). As discussed above, the Sixth, Ninth, and Tenth Circuit opinions indicate that a "general constitutional rule" did not apply "with obvious clarity."
The facts of the case also demonstrate that a general constitutional rule did not apply with obvious clarity. Although we view the facts in the light most favorable to Z.J., we "consider[ ] only the facts that were knowable to the defendant officers." White v. Pauly , --- U.S. ----, 137 S. Ct. 548, 550, 196 L.Ed.2d 463 (2017) (per curiam). The record shows that the home's lights were turned on when Carla Brown opened the door, and Rusley could see to the "back wall" of the room from where he was positioned at the door. According to Brown, Rusley threw the flash-bang grenade over her head. Rusley testified that he was trained to throw flash-bang grenades away from people and that he threw the flash-bang grenade "approximately 20 feet" into the living room.
Rusley took reasonable precautions to minimize the flash-bang grenade's potential impact on bystanders. He threw the flash-bang grenade away from Brown when nobody else was visible in the living room, and the only way he could have inspected the living room more thoroughly was by entering. But the very purpose of using the flash-bang was to allow the SWAT team to enter the home with minimal risk of confrontation. See L.A. Cty., Cal. v. Rettele , 550 U.S. 609, 616, 127 S.Ct. 1989, 167 L.Ed.2d 974 (2017) (per curiam) ("When officers execute a valid search warrant and act in a reasonable manner to protect themselves from harm, however, the Fourth Amendment is not violated.").
The court correctly notes that we must assume that Brown held up the keys to open the door for the SWAT team and that the SWAT team had already knocked and announced its presence. Ante , at 682. It concludes that there was no need to use the flash-bang grenade because the occupants already knew, after the knock and *692 announce, that the SWAT team was there. Ante , at 685-86. But though the occupants may have already known the SWAT team was at the door due to the knock and announce, a SWAT officer still could have reasonably believed-even though ultimately mistaken-that safety concerns necessitated an expedited entry by using a flash-bang grenade because, as Detective Robert Jorgenson noted, it was taking "longer than the normal amount of time to get into the residence." And even though the suspect was already in custody, the team was investigating a serious and violent crime-murder. I would thus conclude that the law was not clearly established in November 2010.
Second, the court's conclusion that the decision to authorize a SWAT team to execute a search warrant can constitute excessive force and therefore an unreasonable search is unnecessary. Ante , at 687-88. Thus, I only would decide, and agree with the court, that authorizing the SWAT team did not violate clearly established law. See Fortunati v. Vermont , 503 F. App'x 78, 81 (2d Cir. 2012) (declining to decide whether deploying a SWAT team can amount to a Fourth Amendment violation because the Second Circuit had not addressed the question and concluding instead that the right was not clearly established).
To be sure, the use of a SWAT team may involve a show of overwhelming force and may be unreasonable in a particular context, but whether the use of a SWAT team constitutes an unreasonable use of force necessarily depends on the SWAT team's actions in executing the warrant. An officer making the general decision to deploy a SWAT team may not be responsible for the tactical decisions the team makes in carrying out the search. Here, there is no evidence that the SWAT team always applies excessive force. Cf. Mountain Pure , 814 F.3d at 933 (noting that none of the cases the appellant cited indicated "that the presence of armed officers, without more, is objectively unreasonable during the execution of a search warrant"). The mere decision to use a SWAT team does not "determine[ ] the degree of force initially to be applied in effecting the seizure itself." Contra Holland ex rel. Overdorff v. Harrington , 268 F.3d 1179, 1190 (10th Cir. 2001).
The Tenth Circuit's decision in Holland also involved whether the decision to use a SWAT team could constitute excessive force in executing a seizure rather than a search. The Eighth Circuit "scrutinize[s] only the seizure itself, not the events leading to the seizure, for reasonableness under the Fourth Amendment." Cole v. Bone , 993 F.2d 1328, 1333 (8th Cir. 1993). Indeed, "[t]he Fourth Amendment prohibits unreasonable seizures, not unreasonable or ill-advised conduct in general." Id . Ultimately, as explained above, I would not decide this issue because it is not necessary to resolution of the case.